COMMONWEALTH of Pennsylvania,
Appellee

v.

Braeden D. MALONEY, Appellant.

Superior Court of Pennsylvania.

Submitted March 17, 2005.

June 1, 2005.

Patrick T. Klena, Bellefonte, for appellant.

Mark S. Smith, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

Before: STEVENS, BOWES, and McCAFFERY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Centre County after a jury found 18 year old Appellant guilty of just one of two counts of Selling or Furnishing Liquor to a Minor, 18 Pa.C.S.A. § 6310.1(a). On appeal, Appellant challenges the sufficiency of evidence that he knew the age of the victim, and that he actually sold or furnished liquor. Appellant also challenges the court's denial of his motion *in limine* to exclude a police officer's testimony as to the minor's physical condition and level of intoxication. We affirm.

¶ 2 This case centers on 18 year-old, Penn State–University Park freshman Appellant's involvement in the intoxication of fellow 18 year-old freshman Kimberly Brower. On July 14, 2003, at 2:50 a.m., Penn State police officers were dispatched to Hamilton Hall on a report of a female (Ms. Brower) vomiting in the women's restroom. Escorted by a University Resident Assistant, the officers discovered Ms. Brower lying on the bathroom floor curled up around the toilet with vomit and blood

in the toilet and on herself. According to the evidence, the officers detected a pungent odor of alcoholic beverage from Ms. Brower, and she was unconscious, unresponsive to intense waking measures, and exhibited weak vital signs. The officers transported Ms. Brower to the Centre Community Hospital.

¶ 3 Investigating officers subsequently learned from another Hamilton Hall freshman, Julieann Micklos, that both she and Ms. Brower had been drinking at a party hosted by Appellant in his Hamilton Hall dormitory room. Again escorted by a Residence Life officer, Penn State Police Officer Mark Allen knocked on Appellant's dormitory room door and announced "Penn State University Police." Appellant's roommate opened the door and admitted the officers. Still in the room, Appellant confessed to the officer that about seven individuals including Ms. Brower and Ms. Micklos had been drinking in his room, that he had already learned Ms. Brower was taken to the hospital, and that neither Brower nor Micklos had brought any alcohol with them.

¶ 4 Appellant was charged with two counts of Selling/Furnishing Liquor to Minors. Appellant filed a pre-trial Motion *in limine* seeking exclusion of any testimony Officer Allen may supply regarding Ms. Brower's physical state when first discovered on the restroom floor. Rejecting Appellant's argument that such testimony was inflammatory and unfairly prejudicial, the court found, instead, that evidence of Ms. Brower's significant intoxication in a dormitory common area, and Appellant's discovery thereof, was probative to Appellant's motive to remove alcohol from his room before a campus investigation arrived at his door. Such removal, moreover, could reasonably be found to reflect Appellant's consciousness of guilt of having furnished alcohol to minors, the court concluded.

¶ 5 At trial, a jury heard testimony from Brower, Micklos, Appellant's roommate Curtis Keiper, dorm neighbor down the hall Zach Weinberg, and Ms. Brower's roommate Michelle Burgess—all of whom had been 18 year-old freshmen living in Hamilton Hall on the night in question. Officer Mark Allen was the last Commonwealth witness to testify.

¶ 6 Viewed in a light most favorable to the Commonwealth as verdict winner, the students were cautious and vague in their testimonies, seemingly reluctant to provide any damaging testimony against Appellant. For example, Ms. Brower testified that she helped herself to the alcohol in Appellant's room after Appellant gave no answer to her questions concerning whose alcohol it was and if she could drink it. She later went so far as to change her testimony, however, to say that the alcohol definitely was not Appellant's:

> [DEFENSE COUNSEL]: There was no response [by Appellant] that it [was] his alcohol.
>
> [MS. BROWER]: Oh, yes, there was no response. It wasn't his.
>
> Q: There was no response that he said-
>
> A: No, it wasn't his. No, it wasn't his.

N.T. 3/26/04 at 36. Coincidentally enough, Ms. Micklos gave the same account of Appellant's peculiar non-response when she had asked him if she could have a drink:

> [DEFENSE COUNSEL]: When you got to the room, you asked [Appellant] if you could drink the alcohol?
>
> [MS. MICKLOS]: Yes.
>
> Q: And he did not respond to you, correct?

A: No.

N.T. at 52.

¶ 7 Ms. Brower also acknowledged knowing Appellant from her hometown, but would then check herself and limit the extent to which she knew Appellant:

> [PROSECUTION]: Did you know [Appellant] prior to that time [the July 13th party in Appellant's room]?
>
> [MS. BROWER] He went to a surrounding high school in my hometown. I have met him through acquaintances, but—.
>
> \* \* \* \* \* \*
>
> [DEFENSE COUNSEL] You indicated that you knew [Appellant] from living at Penn State?
>
> [MS. BROWER] Yes. I also knew [Appellant] just because we were from the same hometown.
>
> Q: You didn't know him from your hometown?
>
> A: No, I just heard of the name.

N.T. 3/26/04 at 37.

¶ 8 Nevertheless, the students collectively offered damaging testimony that: (1) Appellant attended the drinking party in his room for the entire night; (2) seven or so dormitory residents drank at the party; (3) all testifying students were 18 years old at the time of the party; (4) Appellant was a hometown friend of Micklos's—Brower's high school mate—during their high school years and had also met fellow hometown resident Brower through acquaintances prior to their time as Penn State students, N.T. 3/26/04 at 27–28, 30; (5) Ms. Brower asked Appellant directly if she could help herself to a drink, and received a silent, non-responsive look with no opposition when she poured herself four drinks right in front of Appellant; (6) Appellant personally returned Ms. Brower to her room sometime after 1:00 a.m., with both of them laughing, N.T. at 40; and (7) Appellant and his roommate transferred bags of alcohol bottles from their room to their neighbor's dorm room in anticipation of a security investigation of their room.

¶ 9 Officer Allen also took the stand and gave a complete account of the evening, which included Appellant's admission to having hosted the alcohol party in his dorm room for the entire evening, and that Ms. Brower and Ms. Micklos attended. N.T. at 85. Officer Allen also offered another telling remark regarding Appellant's state of mind with respect to the age of his partygoers. Specifically, Officer Allen said, without objection or rebuttal, that Appellant refused to divulge the names of his partygoers because he did not want to get them in trouble with police. N.T. at 82.

¶ 10 At the conclusion of the Commonwealth's case-in-chief, the defense moved for acquittal based on the dissent in *Commonwealth v. Lawson*, 759 A.2d 1 (Pa.Super.2000) (McEwen, P.J., concurring and dissenting), which disagreed with the Majority holding that Section 6310.1 may apply to a case of a minor accused of furnishing another minor. The trial court denied the defense motion. Defense counsel also moved that more custody-and-control-of-the-room evidence was needed than simply showing that the room was Appellant's dorm room. The court disagreed that a housing contract assigning Appellant to the dorm room in question was necessary to establish custody and control, and so denied the second defense motion. After receiving its instructions, the jury deliberated and convicted Appellant of furnishing Ms. Brower alcohol, but acquitted him of furnishing alcohol to Ms. Micklos. Appellant was sentenced to one year's probation and ordered to pay a $1,000.00 fine. This appeal followed.

¶ 11 Appellant enumerates three issues for our review:

**I. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION IN LIMINE?**

**II. WAS THERE INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT DID SELL OR FURNISH LIQUOR TO MINORS?**

**III. WAS THERE SUFFICIENT EVIDENCE THAT DEFENDANT KNEW THE AGE OF THE ALLEGED VICTIM?**

Brief for Appellant at 6. Despite stating three issues, Appellant argues only the first and third issues.

A motion in *limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered. Such a ruling is similar to that upon a motion to suppress evidence.... We apply an evidentiary abuse of discretion standard to the denial of a motion in limine.

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion.

*Commonwealth v. Zugay*, 745 A.2d 639, 644–645 (Pa.Super.2000) (citations omitted).

 ¶ 12 In determining whether evidence should be admitted, the trial court must weigh the relevance and probative value of the evidence against the prejudicial effect of that evidence. *Commonwealth v. Barnes*, 871 A.2d 812, 818 (Pa.Super.2005). Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. *Id.* Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inad-missible because of its prejudicial effect. *Id.*

 ¶ 13 We find no error in the admission of testimony describing Ms. Brower's state of public drunkenness, for the extent of Ms. Brower's condition was a critical part of the timeline of events in this case, particularly as it prompted both a police investigation into the source of alcohol she drank and an evacuation of the alcohol from Appellant's room before the investigation arrived at the door. In this respect, the challenged testimony about Ms. Brower's condition, and Appellant's reaction to it, were both relevant and probative to Appellant's state of mind in the case, that is, whether he knew that Ms. Brower was underage so as to prompt investigation into an underage party in the dormitory. The defense, of course, was free to counter that Appellant's reaction had nothing to do with Ms. Brower's age, but with his own age and desire to avoid an underage possession charge. Such a defense theory, however, did not as a matter of law nullify the relevance and probative nature of the Commonwealth's testimonial offering, and was, instead, a question of fact for the jury to decide.

 ¶ 14 Moreover, the prejudicial effect of such testimony did not rise to the level of unfair prejudice, requiring the testimony's exclusion. Unaccompanied by demonstrative evidence, the testimony succinctly described Ms. Brower's condition in a medical manner, without sensationalism or undue repetition. Accordingly, we find no error in the court's denial of Appellant's motion in *limine*.

 ¶ 15 Appellant's remaining issue goes to the sufficiency of evidence supporting his conviction under Section 6310.1(a). In reviewing a sufficiency of the evidence claim, the test we apply is

whether the evidence, and all reasonable inferences taken from the evidence, viewed in the light most favorable to the Commonwealth as verdict-winner, were sufficient to establish all the elements of the offense beyond a reasonable doubt. *Lawson, supra.*

¶ 16 18 Pa.C.S.A. § 6310.1(a), "Selling or furnishing liquor or malt or brewed beverages to minors," provides in pertinent part:

> [A] person commits a misdemeanor of the third degree if he...intentionally and knowingly furnishes...any liquor or malt or brewed beverages to a person who is less than 21 years of age.

Id. For purposes of Section 6310.1(a), "furnishing" means "[t]o supply, give or provide to, *or allow a minor to possess on premises or property* owned or *controlled by the person charged.*" 18 Pa.C.S.A. § 6310.6 (emphasis added). The jury received proper and complete instruction on Section 6310.1.

¶ 17 Appellant contends that there was insufficient evidence to satisfy the *mens rea* requirement that Appellant furnished alcohol to Ms. Brower despite knowing she was a minor. In support of his argument, Appellant cites *Commonwealth v. Scolieri,* 571 Pa. 658, 813 A.2d 672 (2002), which interprets Section 6101.1(a) as setting forth an "actual knowledge" *mens rea* requirement. Appellant argues that "nothing in the record supports the decision that [Appellant] knew beyond a reasonable doubt that Ms. Brower was under the age of 21." We disagree.

¶ 18 As the court properly instructed the jury, it is settled that circumstantial evidence taken in its totality may prove actual knowledge. *Compare Commonwealth v. Fears,* 575 Pa. 281, 836 A.2d 52 (2003) (recognizing that the totality of circumstances may be considered to determine whether a defendant had actual knowledge

of the implications and rights associated with a guilty plea); *Commonwealth v. Jones,* 874 A.2d 108, 121 (Pa.Super.2005) (collecting cases that hold intent to exercise conscious dominion over contraband may be inferred from totality of circumstances); *Commonwealth v. Ortiz,* 786 A.2d 261, 270 (Pa.Super.2001) (collecting cases that hold "requisite knowledge and intent may be inferred from examination of the totality of the circumstances."). This is not to say, however, that one may impute actual knowledge simply as a result of the relationship between the parties, a position this Court rejected in a civil case based on an alleged Section 6310.1 violation.

¶ 19 In *Kapres v. Heller,* 417 Pa.Super. 371, 612 A.2d 987, 991–992 (1991), a social host liability case, minor plaintiff sued, *inter alia,* the off-site landlord of a college town premises where plaintiff had attended an underage alcohol party hosted by college student tenants, had become intoxicated, and had, consequently, sustained injuries. Addressing plaintiff's Section 6310.1 theory against landlord, we held that a plaintiff could not prove actual knowledge on the part of landlord simply because the landlord had included in his lease a clause giving him the right to terminate if the premises were used for keg parties. This contractual relationship between landlord and the party-hosting tenants did not prove that landlord actually knew about the underage party.

> No evidence was presented the adult appellees [landlord] were present on the premises the evening appellant willingly imbibed at parties hosted by the tenants. They [landlord] did not plan the events nor were they involved in supplying or purchasing the alcohol served. The fact the parties appellant allegedly attended were held on property owned by the adult appellees is of no conse-

quence considering their obvious detachment from the events leading to appellant's tragic accident. We will impose no duty for what appellant argues appellees should have known.

*Kapres,* 612 A.2d at 992.

¶ 20 In the context of a bartender/customer relationship, the Pennsylvania Supreme Court in *Scolieri, supra,* also found evidence insufficient to prove actual knowledge under Section 6310.1. Specifically, when a father discovered that his sixteen year old son was frequenting a local bar, he called police to report the bar. Police arranged a controlled purchase whereby the boy bought a case of beer from the bar, leading to the bartender's arrest. The evidence showed only that the bartender had been introduced to the boy through a friend at work, and had periodically sold him liquor in the bar for about one year. There was no evidence of a friendship or social relationship between the bartender and the boy. The bartender also testified that the boy had presented an identification card placing the boy's age at twenty-two, but the boy denied ever being carded.

¶ 21 On a motion to acquit, the trial court judge commented that the boy looked much older than his sixteen years, and thus found lacking evidence that the bartender actually knew the boy was underage. Nevertheless, the trial court interpreted "knowingly and intentionally" in Section 6310.1(a) to modify only the word "furnished," such that Section 6310.1 did not require the Commonwealth to prove that the defendant knew that the person was under 21 years of age. The trial court thus convicted the bartender. This Court

affirmed on different grounds, specifically, that the Commonwealth sustained its *mens rea* burden under Section 6310.1(a) upon proving beyond a reasonable doubt that the defendant *should have known* the person furnished was under 21. *Commonwealth v. Scolieri,* No. 45 WDA 2001, slip op. at 1, 792 A.2d 1287 (Pa.Super. filed December 28, 2001).

¶ 22 The Pennsylvania Supreme Court reversed this Court on the holding that only evidence that a defendant *actually knew* that the furnished person was underage could sustain the Commonwealth's burden of proof. Because the trial court specifically found that the Commonwealth failed to make such proof, the Supreme Court vacated judgment of sentence. In his dissent joined by Justices Castille and Eakin, Justice Saylor noted that:

> If the Commonwealth were required to prove beyond a reasonable doubt that the person furnishing alcohol to a minor knew that he or she was under the age of 21, the statute would be virtually unenforceable. *Given the appearance of many young men and women between the ages of 18 and 21, it would be impossible to prove the offender knew that the person being served was under the age of 21.*

*Scolieri,* 571 Pa. at 670–671, 813 A.2d at 679 (Saylor, J. dissenting) (emphasis added).[1]

¶ 23 Here, the evidence of actual knowledge against Appellant far exceeded that provided in *Kapres* and *Scolieri.* As enumerated above, Appellant hosted this party at all times in his college dorm room; he drank along with his guests, all of whom were dormitory residents and 18

---

1. The italicized portion of the excerpted dissent would seem to confine the dissent's concerns to the context of commercial selling or furnishing to strangers, where the only practicable way to ascertain the age of a young adult stranger would be through an identification card. We find this particular point inapplicable to a case of furnishing alcohol to friends or acquaintances, where additional means of knowing age would readily exist.

years old; he knew both Ms. Micklos and Ms. Brower from his hometown before they entered college; and he personally delivered Ms. Brower back to her room, laughing with her as he did. As to the last two points, Appellant argues that both Ms. Micklos and Ms. Brower testified only that they knew him, not that he knew them in return. Whether or not we find this argument incredible, it is a fair inference from the girls' testimonies that the acquaintanceships/friendships were mutual, and it was thus completely within the province of the jury to decide the mutuality of the relationships.

¶ 24 Further evidence of Appellant's knowledge of his guests' ages in general, and Ms. Brower's age in particular, was testimony that Appellant would converse normally with guests unless they asked permission to pour themselves a drink, whereupon Appellant deliberately offered a silent look in response, or just looked away altogether. A jury could reasonably infer from this affectation of not responding that Appellant was attempting to protect himself from potential accountability for people he knew to be under 21. Indeed, Appellant himself possessed the alcohol in his room and openly drank in front of the other guests, so he had already created exposure on his own possession and consumption. The only reasonable inference to make from his affectation, therefore, was that he knew his guests were underage as well, and did not want to convey an image of overtly serving them.[2] Finally, also tending to show that Appellant knew his guests to be underage was his unwillingness to divulge their names, for fear they would also "get in trouble" with Officer Allen.

¶ 25 From this totality of evidence, a jury could find beyond a reasonable doubt that Appellant knew Ms. Brower to be under the age of 21. Accordingly, we reject Appellant's sufficiency challenge.

¶ 26 Judgment of sentence is affirmed.

---

**2.** Of course, Appellant was mistaken in his belief that he protected himself from accountability so long as he gave no verbal permission to drink in his room. As noted *supra*, "furnishing" under pertinent part of the statute occurs when one knowingly allows underage possession of alcohol on premises under one's control.