J-A06017-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROD L. JONES, JR. | : | |
| | : | |
| Appellant | : | No. 1636 WDA 2016 |

Appeal from the Judgment of Sentence June 28, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008782-2015

BEFORE: BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.: FILED JULY 27, 2018

Appellant, Rod L. Jones, Jr., appeals from the judgment of sentence entered following his convictions of various sex related offenses committed upon a family member ("Victim"). In addition, Appellant was determined to be a sexually violent predator ("SVP"). We affirm the judgment of sentence, but we vacate the order determining Appellant to be an SVP and remand for the trial court to issue appropriate notice of Appellant's registration requirements as a sex offender.

The trial court summarized the underlying facts of this case as follows:

Briefly, the evidence presented at trial established that when [Victim] was [13] years old, [Victim's] mother married [Appellant]. For two (2) years, the family lived in Whitaker, then relocated to . . . West Mifflin. On one occasion at the Whitaker house when [Victim] was 13, [Appellant] came into her room while she was sleeping, pulled down her pajama pants and attempted to penetrate her with his penis from behind. [Victim] pushed [Appellant] away and he left without completing [the]

_____
* Retired Senior Judge assigned to the Superior Court.

act. Then, after the family moved to their [West Mifflin] residence, [Appellant] began a series of assaults on [Victim], beginning with him performing oral sex on her, her performing oral sex on him and, eventually, vaginal intercourse. [Appellant] warned [Victim] not to tell anyone what was occurring, saying that no one would believe her. [Appellant] also threatened to tell [Victim's] mother bad things about [Victim] if she told. The assaults continued until [Victim] was 17, when she finally told her mother.

Trial Court Opinion, 5/5/17, at 2.

The trial court set forth the procedural history of this case as follows:

[Appellant] was charged with Rape,[1] Involuntary Deviate Sexual Intercourse with a Person Under 16,[2] Unlawful Contact with a Minor,[3] Aggravated Indecent Assault,[4] Sexual Assault,[5] Statutory Sexual Assault,[6] Endangering the Welfare of a Child,[7] Corruption of Minors[8] and Indecent Assault of a Person Under 16.[9] Following a jury trial held before this [c]ourt from April 5-7, 2016, [Appellant] was found guilty of all charges. He appeared before this [c]ourt on June 28, 2016 and was sentenced to three (3) consecutive terms of imprisonment of nine (9) to 20 years at the Rape, IDSI and Unlawful Contact charges, for an aggregate term of imprisonment of 27-60 years.[1] [Appellant] again appeared before this [c]ourt on September 22, 2016 for an SVP hearing and, at its conclusion, [Appellant] was found to be a sexually violent predator. Timely Post-Sentence Motions were filed and were denied on September 26, 2016. This appeal followed.

[1] 18 Pa.C.S.A. §3121(a)
[2] 18 Pa.C.S.A. §3123(a)(7)
[3] 18 Pa.C.S.A. §6318(a)(1)
[4] 18 Pa.C.S.A. §3125(a)(1)
[5] 18 Pa.C.S.A. §3124.1
[6] 18 Pa.C.S.A. §3122.1(a)(2)
[7] 18 Pa.C.S.A. §4304(a)(1)
[8] 18 Pa.C.S.A. §6301(a)(1)(ii)

_____

[1] Appellant waived his right to have an SVP determination hearing prior to the time of sentencing. N.T., 6/28/16, at 2.

⁹ 18 Pa.C.S.A. §3126(a)(8)

Trial Court Opinion, 5/5/17, at 1-2.[2]

Appellant presents the following issues for our review:

I. DID THE TRIAL COURT ABUSE ITS DISCRETION AND COMMIT REVERSIBLE ERROR BY PERMITTING THE COMMONWEALTH TO PRESENT AN EXPERT OPINION, WHICH WAS BASED UPON SPECIALIZED KNOWLEDGE BEYOND THAT POSSESSED BY THE AVERAGE LAYPERSON, THROUGH A WITNESS WHO HAD NOT BEEN QUALIFIED AS AN EXPERT?

II. DID THE TRIAL COURT ABUSE ITS SENTENCING DISCRETION AND IMPOSE A MANIFESTLY EXCESSIVE AND UNREASONABLE SENTENCE BY (1) FAILING TO CONSIDER ALL STATUORILY REQUIRED SENTENCING FACTORS, INSTEAD FOCUSING EXCLUSIVELY ON THE IMPACT ON THE COMPLAINANT; (2) FAILING TO STATE REASONS FOR ITS SIGNFICANT DEPARTURE FROM THE RECOMMENDED GUIDELINES; AND (3) RELYING ON IMPERMISSIBLE FACTORS?

Appellant's Brief at 6. In addition, in his supplemental brief, Appellant presents the following issue:

III. MUST THE TRIAL COURT'S ORDER DESIGNATING [APPELLANT] AS A[N SVP] BE VACATED WHERE THE FRAMEWORK WITHIN WHICH THAT DESIGNATION WAS MADE WAS DEEMED UNCONSTITUTIONAL IN COMMONWEALTH V. BUTLER?

Appellant's Supplemental Brief at 5.

_____

[2] After Appellant filed his appellate brief and before the Commonwealth filed its appellate brief, this Court issued our decision in Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017). Appellant immediately filed a "Petition to Supplement Brief." On November 8, 2017, this Court entered an order granting Appellant's request to supplement his brief and reset the Commonwealth's briefing schedule.

Appellant first argues that the trial court abused its discretion in permitting the Commonwealth to present testimony in the form of an expert opinion from Allegheny County Police Detective Scott Holzwarth, who had not been qualified as an expert. Appellant's Brief at 15-28. Appellant alleges the Commonwealth offered, and the trial court admitted, this testimony under the guise that Holzwarth was a lay witness providing lay testimony, which relied upon specialized knowledge beyond that possessed by the average layperson. Id. at 15. Specifically, Appellant contends that Detective "Holzwarth testified for the Commonwealth as an expert in child sexual assault cases in disguise and was prompted to offer an opinion, based on his training and experience, concerning [Victim's] specific type of victim response and behavior." Id. at 18-19 (emphasis in original). Appellant concludes that the trial court erred by admitting an expert opinion from a lay witness resulting in prejudice to Appellant and requiring a new trial. Id. at 28.

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion. Commonwealth v. Maloney, 876 A.2d 1002, 1006 (Pa. Super. 2005). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown

by the evidence or the record. Commonwealth v. Cameron, 780 A.2d 688, 692 (Pa. Super. 2001).

Pa.R.E. 701 addresses the admission of opinion testimony by lay witnesses and provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> > (a) rationally based on the witness's perception;
> >
> > (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> >
> > (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

With regard to the admission of expert witness testimony, Pa.R.E. 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

In addressing Appellant's issue, the trial court offered the following analysis:

> [D]efense counsel's cross-examination of [Victim] began with impeachments using her PFA application and her preliminary hearing testimony. He attempted to exploit differences in the details, particularly concerning which type of intercourse happened in which room and the last date of each type of intercourse. Then, during the direct examination of Detective Scott Holzwarth, the following occurred:
>
>> Q. ([Assistant District Attorney]): As a detective in the General Investigations Unit, do you handle all sorts of crimes or do you have a certain type of crime that you do more of?
>>
>> A. (Det. Holzwarth): We do handle many different types of crimes, but I do mostly crimes against people, which includes sex assaults and child abuse.
>>
>> Q. And if you could estimate, during the course of your career, approximately how many child sexual assault cases have you investigated?
>>
>> A. Hundreds. I would have to do the math, but at least hundreds.
>>
>> Q. What else did she tell you regarding the assaults?
>>
>> A. That time?
>>
>> Q. In general.
>>
>> A. In general? That it included oral sex and vaginal sex. She told us that it continued until I think the previous time - the last time for the vaginal sex was perhaps a year before she talked to us and that the last oral sex was about two weeks before she talked to us.
>>
>> Q. Did she indicate whether or not this had happened multiple times to her?

A. Could you repeat that.

Q. Did she indicate whether or not this had been going on multiple times?

A. Yes.

Q. And in your training and experience, Detective, do kids often have trouble remembering each and every time when this is an ongoing incident?

A. Yes, they do. As a matter of fact, in our criminal complaints we normally put a little blurb in there that explains that the victims -

[DEFENSE COUNSEL]: Your Honor, I would object to this as expert testimony. This is opinion.

THE COURT: I'm going to overrule.

Q. Please continue, Detective.

A. - that explains [t]hat victims sometimes have trouble remembering exact dates when events have happened.

Q. And have you also found in your training and experience with your specific cases whether or not victims will have trouble recalling in each incident that they're assaulted every single detail of the assault?

A. Yes.

Q. And do they oftentimes get the times that those things happened confused with other times that they discuss with you?

A. Yes. Very often.

(T.T. pp. 97-98, 99-101).

Throughout the trial, beginning with the opening statement, defense counsel painted [Victim] as a liar, with

emphasis on her inability to remember exact dates and some confusion between which types of intercourse happened in which rooms of the house. Given this defense, the Commonwealth was entitled to question Detective Holzw[a]rth regarding his experience with child victims. It is further worth noting that defense counsel concluded his cross-examination of Detective Holzwarth by returning to this point, and, with effective questioning, was able to get the Detective to concede that an alternative reason the allegations made by child victims lacked detail was that they never happened. Thus, any perceived damage to [Appellant] by the testimony was more than remedied on counsel's cross-examination. Under the circumstances of this particular case, the Commonwealth was entitled to question Detective Holzwarth regarding his experience with child victims and this [c]ourt did not err in allowing the testimony. This claim is meritless.

Trial Court Opinion, 5/5/17, at 8-10.

Upon review of the record, we agree with the trial court that Detective Holzwarth's testimony was not outside the scope of Pa.R.E. 701. We discern no abuse of discretion in the trial court's determinations that (1) Detective Holzwarth, who testified as to matters within his personal knowledge and experience, did not need to be qualified as an expert in order to discuss Victim's inability to recall specific dates of the sexual incidents, and (2) he gave permissible lay opinion testimony regarding his observations with similar victims of sexual abuse. Accordingly, we conclude that Detective Holzwarth's testimony was rationally based on his experience, was helpful to the trier of fact, and was not based on scientific, technical, or other specialized knowledge. Therefore, the trial court did not err in permitting Detective Holzwarth's testimony.

Appellant's next issue challenges the discretionary aspects of his sentence. It is well settled that there is no absolute right to appeal the discretionary aspects of a sentence. Commonwealth v. Hartle, 894 A.2d 800, 805 (Pa. Super. 2006). Rather, in such a case, the appeal should be considered a petition for allowance of appeal. Commonwealth v. W.H.M., 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in Commonwealth v. Moury, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Id. at 170 (citing Commonwealth v. Evans, 901 A.2d 528 (Pa. Super. 2006)).

Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. Commonwealth v. Kenner, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. Commonwealth v. Malovich, 903

A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. Id.

Herein, the first three requirements of the four-part test are met. Appellant brought an appropriate appeal, raised the challenge in a post-sentence motion, and he included in his appellate brief the necessary concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

Appellant argues that the trial court imposed an excessive sentence that was based solely on the nature and facts of the case and seriousness of the crime and did not consider Appellant's need for rehabilitation. Appellant's Brief at 29-39. Appellant also alleges that the trial court failed to put adequate reasons on the record to justify its sentencing decision. Id. at 32. Considering this claim to be an allegation that the sentencing court failed to consider factors set forth under 42 Pa.C.S. § 9721(b),[3] we conclude that, in this instance, Appellant has raised a substantial question. See Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa. Super. 2006) (concluding that the appellant raised a substantial question where it was

_____

[3] We note that the factors to be considered under 42 Pa.C.S. § 9721(b) include the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant.

alleged that the trial court failed to properly consider the factors set forth in 42 Pa.C.S. § 9721(b)). Because Appellant has stated a substantial question, we will address this claim on appeal.

Appellant asserts that, in fashioning his sentence, the sentencing court failed to consider properly the required sentencing factors, while focusing on the gravity of the offense and its impact upon Victim. Appellant's Brief at 43-56. However, we discern no abuse of discretion on the part of the sentencing court.

It is undisputed that sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. Fullin, 892 A.2d at 847. In this context, an abuse of discretion is not shown merely by an error in judgment. Id. Rather, the appellant must establish by reference to the record that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. Id.

Indeed, the sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference, as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference and the overall effect and nature of the crime. Commonwealth v. Walls, 926 A.2d

957, 961 (Pa. 2007) (quotations and citations omitted).[4]  As previously stated, when imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S. § 9721(b).  As we have stated, "a court is required to consider the particular circumstances of the offense and the character of the defendant."  Commonwealth v. Griffin, 804 A.2d 1, 10 (Pa. Super. 2002).  "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for

_____

[4] The Walls Court instructed the following:

> In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:
>
> (d) Review of the record.—In reviewing the record the appellate court shall have regard for:
>
>> (1) The nature of the circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation.
>>
>> (3) The findings upon which the sentence was based.
>>
>> (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S.A. § 9781(d).

Id. at 963.

rehabilitation." Id. However, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." Commonwealth v. Ventura, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citing Commonwealth v. Devers, 546 A.2d 12 (Pa. 1988)).

Here, in providing its reasoning for imposing the specific sentence upon Appellant, the trial court offered the following discussion in its written opinion that also quotes its comments made at the time of sentencing:

> At the sentencing hearing, this [c]ourt noted that it had read and considered a Pre-Sentence Investigation report. (Sentencing Hearing Transcript, p. 9). "Where pre-sentence reports exist, [the appellate court] shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." Commonwealth v. Macias, 968 A.2d 773, 778 (Pa.Super. 2009). This Court then placed its reasons for imposing sentence on the record:
>
>> THE COURT: Okay. [Appellant], I have ordered, read and considered a presentence report. The guidelines have been submitted indicating that you are a twelve and a zero. At least at each of the first three counts.
>>
>> I agree with [the Assistant District Attorney] that you committed a number of violent sexual activities against [Victim] who was your stepdaughter. She had the right to have you love her and protect her,

- 13 -

not to rape her and perform various kind of sexual acts. I am concerned that these acts occurred from the time she was 11 until the time she was 17.[5] You violated a position of trust and you just heard the impact that you have had both on [Victim] and her mother.

(S.H.T. p. 9-10).

As the record reflects, this [c]ourt appropriately read and considered the pre-sentence investigation report, considered the factors and severity of the present offense, evaluated [Appellant's] potential for rehabilitation and imposed a sentence which took all of these factors into consideration. Neither is [Appellant's] argument that this [c]ourt erred in imposing consecutive sentences persuasive. It is by now well-established that the decision to run sentences consecutively is within the discretion of the trial court. "Long standing precedent of [the Superior] Court recognizes that 42 Pa.C.S.A. §9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." [Commonwealth v. Marts, 889 A.2d 608, 612 (Pa. Super. 2005).] Given the nature and circumstances of this crime, this [c]ourt was well within its discretion in running the sentences consecutively.

Ultimately, the record reflects great deliberation and consideration in the formulation of the sentence. [Appellant's] unhappiness with the length of his sentence does not mean it is "excessive" or constituted an abuse of discretion. Given the facts of this case, the sentence imposed was appropriate, not excessive and well within this [c]ourt's discretion. This claim must fail.

Trial Court Opinion, 5/5/17, at 10-12.

---

[5] We observe that the trial court misstated Victim's age at the time that the sexual conduct began. The trial court commented that Victim was eleven years old, when Victim was actually thirteen years old.

Likewise, our review of the record reflects that, at the time of Appellant's sentencing, the trial court had received and reviewed a presentence report. N.T., 6/28/16, at 2, 9. In addition, the trial court heard the following argument from defense counsel reminding the court of Appellant's prior history and requesting a minimum sentence within the standard range of the Sentencing Guidelines:

> Judge, just very briefly. You have reviewed the presentence report for purposes of today's hearing. He is a prior record score of zero. He has no history of prior convictions that are sexual in nature. As it states in the record he was removed from his parents at a young age due to their drug abuse and was raised in placement. And just from my conversations with him obviously he is very sorry for the pain that he caused this family and in this case we would just ask that the court consider a standard range sentence in this case, which would be anywhere from five to ten or six to twelve years on the lead charge.

Id. at 2-3. Also, the trial court heard Appellant offer an apology to his family. Id. at 3. Moreover, prior to sentencing, the Assistant District Attorney read into the record a statement prepared by Victim's mother concerning the impact that the crimes had upon Victim and the entire family. N.T., 6/28/16, at 3-5. Further, Victim read into the record her own prepared statement detailing the ongoing trauma and depression that she suffered from the incidents, which led her to contemplate suicide. Id. at 5-8. Furthermore, prior to imposing sentence, the trial court specifically indicated that it had ordered, read and considered Appellant's presentence report. Id. at 9. Because the trial court had been fully informed and relied upon the presentence report, we conclude that the trial court did not abuse its

discretion in fashioning Appellant's sentence. Accordingly, Appellant's claim that the trial court failed to consider the appropriate sentencing factors lacks merit.

Appellant last argues that, pursuant to our decision in Butler,[6] the trial court's determination that he is an SVP pursuant to the Sexual Offender Registration and Notification Act ("SORNA")[7] is illegal.[8] Appellant's Supplemental Brief at 10-14. Appellant requests that this Court vacate the order designating him to be an SVP. Id. at 14.

_____

[6] On January 3, 2018, this Court denied reargument in Butler. However, on February 1, 2018, the Commonwealth filed a petition for allowance of appeal to the Pennsylvania Supreme Court. That petition, at 47 WAL 2018, is still pending as of this writing.

[7] SORNA, 42 Pa.C.S. §§ 9799.10-9799.41, replaced Megan's Law and became the statute governing the registration and supervision of sex offenders. SORNA provides that a defendant found guilty of certain enumerated offenses is subject to one of three different "tiers" of registration periods. See 42 Pa.C.S. § 9799.14 (setting forth graduated tier system). SORNA also subjects a period of lifetime registration upon those that the trial court, at the time of sentencing, finds to be SVPs by clear and convincing evidence. 42 Pa.C.S. § 9799.24(e)(3). SORNA was recently amended by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018.

[8] Appellant has acknowledged that he did not raise his Butler claim before the trial court. Appellant's Supplemental Brief at 14-15 n.10. Although Appellant raises this issue for the first time on appeal, we may review it. See Butler, 173 A.3d at 1214 (holding that, while issues not raised before the trial court are generally waived for appellate purposes, a challenge to the legality of a sentence need not be preserved in the trial court in order to be reviewable).

During the pendency of this appeal, the Pennsylvania Supreme Court issued its decision in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), cert. denied, 138 S.Ct. 925 (2018). In Muniz, the Court held that the registration requirements set forth under SORNA constitute criminal punishment as opposed to a civil penalty, and therefore, their retroactive application violates the Ex Post Facto clause of the United States Constitution. Id., 164 A.3d at 1218.

Subsequently, this Court held that applying SORNA's aggravated registration periods for those found to be SVPs is unconstitutional. Butler, 173 A.3d at 1217. In Butler, we concluded that, because the Court in Muniz held SORNA's registration requirements are punitive, and an SVP designation increases the registration period, trial courts cannot apply SORNA's increased registration requirement for SVPs because SORNA does not require a fact-finder to determine, beyond a reasonable doubt, that the defendant is an SVP. Id. at 1217-1218 (citing Alleyne v. United States, 570 U.S. 99 (2013)).

In Butler, we instructed trial courts to apply only the applicable tier-based registration period, because those periods apply based on the conviction itself and are not triggered by any additional fact not found by the fact-finder. Butler, 173 A.3d at 1218. We ultimately reversed the order finding the appellant to be an SVP and remanded to the trial court for the

purpose of issuing appropriate notice[9] of the appellant's tier-based registration period. Id. at 1218.

To its credit, the Commonwealth concedes that Appellant's issue has merit. Specifically, the Commonwealth does not oppose vacating Appellant's SVP status and remanding the case for the sole purpose of providing Appellant with new notice of his sex offender registration and reporting requirements under 42 Pa.C.S. § 9799.23. Commonwealth's Brief at 26.

Here, the trial court conducted an SVP hearing and determined Appellant to be an SVP by clear and convincing evidence, rather than beyond a reasonable doubt. Under Muniz and Butler, we conclude that the trial court's September 22, 2016 order deeming Appellant to be an SVP is unconstitutional and constitutes an illegal sentence. Therefore, we vacate Appellant's SVP status and, in accord with Butler, remand this matter to the trial court to issue appropriate notice to Appellant of his registration obligations pursuant to 42 Pa.C.S. § 9799.23.

SVP Order vacated. Judgment of sentence affirmed in all other respects. Case remanded with instructions. Jurisdiction relinquished.

P.J.E. Bender joins this Memorandum.

Judge Strassburger files a Dissenting Memorandum.

_____

[9] See 42 Pa.C.S. § 9799.23 (providing for court notification and classification requirements).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/27/2018